35 F.3d 49
 94-2 USTC P 50,452
 Dr. Lenora B. FULANI and Lenora B. Fulani For President,
Plaintiffs-Appellants,
v.
Lloyd BENTSEN, Secretary of the Treasury, Margaret
Richardson, Commissioner of Internal Revenue, and
League of Women Voters Education Fund,
Defendants-Appellees.
 No. 918, Docket 93-6205.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 13, 1994.
Decided Sept. 6, 1994.
 
 Arthur Block, New York City, for plaintiffs-appellants.
 Kathy S. Marks, Asst. U.S. Atty., S.D.N.Y., New York City (Mary Jo White, U.S. Atty., Gabriel W. Gorenstein, Asst. U.S. Atty., S.D.N.Y., of counsel), for defendants-appellees Lloyd Bentsen and Margaret Richardson.
 Brooksley Born, Washington, DC (Robert J. Jones, Peter C. Cassat, Arnold and Porter, New York City, of counsel), for defendant-appellee League of Women Voters Education Fund.
 Before: MINER and MAHONEY, Circuit Judges, and RESTANI, Judge.*
 MAHONEY, Circuit Judge:
 
 
 1
 Plaintiffs-appellants Lenora B. Fulani and Lenora B. Fulani for President (sometimes collectively "Fulani") appeal from a judgment entered February 3, 1993 in the United States District Court for the Southern District of New York, Robert W. Sweet, Judge, that dismissed Fulani's amended complaint, and from an order entered June 29, 1993 in that court which denied Fulani's motions for reargument and to amend the judgment. See Fulani v. Brady, 809 F.Supp. 1112 (S.D.N.Y.1993) (opinion supporting judgment) ("Fulani I "); Fulani v. Brady, 149 F.R.D. 501 (S.D.N.Y.1993) (opinion supporting order) ("Fulani II ").
 
 
 2
 Fulani sought declaratory relief and an injunction directing Lloyd Bentsen and Margaret Richardson (collectively the "Federal Defendants")[1] to revoke the tax-exempt status of the League of Women Voters Education Fund (the "League") because the League cosponsored with the Cable News Network ("CNN") a televised New Hampshire primary election debate of Democratic Party presidential candidates on February 16, 1992 from which Fulani was excluded. Judge Sweet dismissed Fulani's complaint on the basis that mandamus would not properly lie to compel the Federal Defendants to revoke the League's tax-exempt status. See Fulani I, 809 F.Supp. at 1127-28.
 
 
 3
 We affirm on the basis that Fulani lacks standing to bring this action.
 
 Background
 
 4
 The factual background of this case is extensively outlined in Fulani I, 809 F.Supp. at 1113-16, familiarity with which is assumed. We summarize only the facts material to this appeal.
 
 
 5
 Fulani was an independent candidate for President in 1988, and appeared on the ballot in all fifty states and the District of Columbia. In February 1991, she announced her candidacy for President in the 1992 election, and she qualified for federal primary election matching funds in October 1991. On or about December 17, 1991, she filed a declaration of candidacy for the New Hampshire Democratic primary election to be held on February 18, 1992.
 
 
 6
 Fulani then applied to the League for inclusion in a televised debate among Democratic presidential candidates to be consponsored by the League and CNN at St. Anselm College, New Hampshire on February 16, 1992 (the "Debate"). By letter dated February 3, 1992, the League advised Fulani that she would not be included in the Debate because she was not a "significant candidate" for the Democratic presidential nomination under the League's selection criteria. By letter to Secretary of the Treasury Nicholas F. Brady dated February 4, 1992, Fulani demanded that the Treasury Department and the Internal Revenue Service, no later than 5:00 p.m. the next day, provide Fulani with notice that they would either (1) cause the League to include Fulani in the Debate, or (2) suspend (or revoke) the League's tax exemption forthwith. As Fulani's letter noted, suspension or revocation would "render the League ineligible from sponsoring the [Debate] by virtue of Federal Election Commission Regulation 11 C.F.R. Sec. 110.13 (1988)."[2]
 
 
 7
 The requested notice was not forthcoming from the Federal Defendants, and Fulani commenced this action on February 7, 1992. She immediately sought a preliminary injunction compelling the Federal Defendants to revoke the League's tax-exempt status prior to the Debate. The motion was denied by Judge John E. Sprizzo after a hearing on February 13, 1992 on the basis that Fulani lacked standing to sue. In so ruling, Judge Sprizzo distinguished our prior decision in Fulani v. League of Women Voters Education Fund, 882 F.2d 621 (2d Cir.1989) ("Fulani III "). In Fulani III, we held that Fulani had standing to sue to revoke the League's tax exemption because of her exclusion by the League from 1988 debates among contenders for the Democratic presidential nomination, see id. at 624-28, but rejected her claim on the merits in view of her independent (non-Democratic) candidacy for the presidential office. See id. at 628-30. Judge Sprizzo distinguished Fulani III on the basis that withdrawal of League sponsorship of the 1988 debates would have resulted in cancellation of the debates, thereby precluding a competitive advantage over Fulani to participants in those debates, whereas the 1992 Debate would have been sponsored by CNN even if the League had been barred from sponsorship by revocation of its tax exemption.
 
 
 8
 To facilitate appellate review, Judge Sprizzo also ruled against Fulani on the merits. An application to this court for an injunction pending appeal was denied the next day, see Fulani I, 809 F.Supp. at 1114 n. 2, and Fulani's appeal from Judge Sprizzo's order was ultimately dismissed as moot. See Fulani v. Brady, 972 F.2d 1329 (2d Cir.1992) (table).
 
 
 9
 The Federal Defendants moved to dismiss Fulani's complaint on July 7, 1992. Fulani I, 809 F.Supp. at 1114. Judge Sweet ruled that Fulani had standing to sue because she had "satisfied both the three-pronged standing test of Allen [v. Wright, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ] and [In re United States] Catholic Conference [(Abortion Rights Mobilization Inc. v. Baker), 885 F.2d 1020 (2d Cir.1989), cert. denied, 495 U.S. 918, 110 S.Ct. 1946, 109 L.Ed.2d 309 (1990) ] and Catholic Conference's competitive advocate standing test." Fulani I, 809 F.Supp. at 1123. Fulani's amended complaint was dismissed, however, because "Fulani's action has the character of mandamus, and a writ of mandamus is inappropriate when a plaintiff seeks to direct or influence the absolute discretion of a government agency." Id. at 1127 (collecting cases).
 
 
 10
 After Fulani's subsequent motions were denied in Fulani II, this appeal followed.
 
 Discussion
 
 11
 Fulani's suit is based upon the intersection of federal election and tax laws. Under Federal Election Commission regulations, candidate debates may be sponsored only by certain non-profit, tax-exempt organizations that refrain from political activity, and by broadcasters, bona fide newspapers, magazines and other periodical publications. See supra note 2. Under 26 U.S.C. Sec. 501(c)(3), the statute that provides the League's tax exemption, a qualifying tax-exempt organization may not "participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office." See also 26 C.F.R. Sec. 1.501(c)(3)-1(c)(3)(iii).
 
 
 12
 Fulani argues that the League violated Sec. 501(c)(3) because it used subjective criteria to exclude her from participation in a Democratic Party presidential debate cosponsored by the League and CNN. Fulani seeks equitable relief to compel the Federal Defendants to revoke the League's tax-exempt status, thereby disabling the League from sponsoring candidate debates. See supra note 2. According to Fulani, the Federal Defendants' failure to revoke the tax-exempt status of the League subsidizes an imbalanced political system that unfairly favors some candidates over others.
 
 
 13
 As we have indicated, we resolve this appeal on the question of standing, and proceed to consider that issue.
 
 
 14
 A. The Elements of Standing.
 
 
 15
 The Constitution confines the judicial power of the federal courts to deciding cases or controversies. U.S. Const. art. III, Sec. 2, cl. 1. The doctrine of standing derives directly from this constitutional provision. See Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). It focusses upon the party seeking to invoke federal jurisdiction, rather than the justiciability of the issue at stake in the litigation. See Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). Thus, "an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." Allen, 468 U.S. at 754, 104 S.Ct. at 3326.
 
 
 16
 To have standing, a plaintiff must " allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Id. at 751, 104 S.Ct. at 3324; see also Fulani III, 882 F.2d at 624 (quoting Allen, 468 U.S. at 751, 104 S.Ct. at 3324). "A plaintiff must always have suffered 'a distinct and palpable injury to himself'...." Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979) (quoting Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)). The injury must be "concrete in nature and particularized to [the plaintiff]," Catholic Conference, 885 F.2d at 1023-24, and not "abstract," "conjectural," or "hypothetical." City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 1664-65, 75 L.Ed.2d 675 (1983).
 
 
 17
 As the multitude of standing cases indicates, however, "[t]hese terms cannot be defined so as to make application of the constitutional standing requirement a mechanical exercise." Allen, 468 U.S. at 751, 104 S.Ct. at 3324. Accordingly, the Supreme Court instructs us to "compar[e] the allegations of the particular complaint to those made in prior standing cases," id. at 751-52, 104 S.Ct. at 3324-25, while keeping in mind the important role that the doctrine of separation of powers plays in limiting the scope of judicial authority. Id. at 752, 104 S.Ct. at 3325.
 
 
 18
 B. Defining Fulani's Injury.
 
 
 19
 In support of her claim of standing, Fulani invokes Fulani III, in which we held that Fulani had standing to bring a claim somewhat similar to her present petition. In Fulani III, the injury claimed by Fulani was that:
 
 
 20
 [S]he was directly injured by the League's refusal to include her in the subject nationally-televised primary debates because she lost critical media exposure and any competitive advantage which might have flowed from her participation in those debates, and because she was deprived of the opportunity to communicate her political ideas to the electorate on equal terms with other significant presidential candidates.
 
 
 21
 882 F.2d at 625. We reasoned that this injury conferred standing because:
 
 
 22
 In this era of modern telecommunications, who could doubt the powerful beneficial effect that mass media exposure can have today on the candidacy of a significant aspirant seeking national political office. The debates sponsored by the League were broadcast on national television, watched by millions of Americans, and widely covered by the media. It is beyond dispute that participation in these debates bestowed on the candidates who appeared in them some competitive advantage over their non-participating peers.
 
 
 23
 Id. at 626 (citations omitted). Moreover, we found that the traceability requirement for standing was met "[i]n light of the fact that 501(c)(3) status is in practice a prerequisite to League sponsorship of candidate debates under FEC regulations," and that redressibility was satisfied because "revocation of the League's tax-exempt status at least would have prevented the League's sponsorship of the debates, from which Fulani claims she was wrongfully excluded." 882 F.2d at 628.[3]
 
 
 24
 The injury alleged here is significantly different from that postulated in Fulani III. As quoted earlier, the injury in Fulani III was the loss of "critical media exposure and any competitive advantage which might have flowed from her participation in those debates." Id. at 625 (emphasis added). Unlike Fulani III, this case is not about Fulani's ability to participate in a debate. Rather, this case is about the alleged incremental advantage accorded participants in debates in which the League plays a sponsoring role.
 
 
 25
 CNN is entitled to sponsor candidate debates without cosponsorship by the League, see supra note 2, and had independently determined that Fulani was not eligible to participate in the Debate. Further, CNN was not a defendant in this lawsuit, and its sponsorship of the Debate was not the object of any parallel legal challenge. Accordingly, as Judge Sweet observed:
 
 
 26
 Of course, as Fulani readily conceded before Judge Sprizzo, if the League had withdrawn from sponsoring the Debate, CNN presumably would have gone forward with it. Thus, the critical allegation against the League and the Federal Defendants is that Fulani was harmed by the League's sponsorship of the Debate because voters received a message that the nonpartisan, federally tax-exempt League determined that Fulani's candidacy did not warrant serious attention.
 
 
 27
 Fulani I, 809 F.Supp. at 1120-21.
 
 
 28
 We agree with Judge Sweet's description of Fulani's asserted injury in this case, and next address the adequacy of that injury to confer standing.
 
 
 29
 C. The Sufficiency of Fulani's Alleged Injury.
 
 
 30
 In arguing that the injury described by Judge Sweet suffices to confer standing, Fulani asks us to assume that: (1) the public would be aware of the identity of the organization(s) that sponsored the Debate; (2) although neither the League nor CNN publicized the selection criteria for the Debate, the public would also be aware that (a) Fulani was excluded from the Debate, (b) the exclusion was based upon criteria that recognized only "significant" candidates, and (c) the League was, and CNN was not, subject to the strictures of Sec. 501(c)(3); and (3) the public would accordingly conclude that the League's exclusion of Fulani was a more credible assessment of Fulani's significance than was CNN's exclusion of Fulani. In sum, Fulani hypothesizes that voters watching a televised debate that did not include Fulani, consponsored by the League and CNN, would thereby come to a less positive or more negative view of Fulani's candidacy than voters watching the same debate sponsored solely by CNN. This contention piles surmise upon conjecture, and we conclude that it does not establish the sort of concrete injury that is required for Article III standing.
 
 
 31
 Fulani argues that her allegations of injury are not speculative because the League has held itself out as a protector of integrity and impartiality in the electoral process. Judge Sweet agreed, citing the League's hostile reaction to the creation of the Commission on Presidential Debates (the "CPD") by the two major parties during the 1988 election. See Fulani I, 809 F.Supp. at 1121. The parties created the CPD as a Sec. 501(c)(3) organization to sponsor the Bush-Dukakis presidential debates in an apparent effort to increase their control over the debate formats and thereby reduce the League's authority over the proceedings. The League withdrew as cosponsor of the Bush-Dukakis debates and challenged the appropriateness of the CPD as the debate sponsor.
 
 
 32
 The district court reasoned that by withdrawing cosponsorship of the Bush-Dukakis debates and leveling an attack on CPD sponsorship, the League was in effect stating that:
 
 
 33
 [I]t is only the League's participation in a debate that assures the American electorate that it is not being duped by the proceedings. Therefore, in the League's own view, to participate as a candidate in a debate sponsored by it is to be given an imprimatur of legitimacy and seriousness that one would not otherwise have because the debate itself is legitimate and serious in character.
 
 
 34
 809 F.Supp. at 1121.
 
 
 35
 We do not agree with this assessment, for two reasons. In the first place, it is addressed only to the League's own attitude toward its role in the overall political and electoral process, not to the public perception of that role which underlies Fulani's claimed injury. We doubt that the general public is as gripped by these political intramurals as the involved contestants. Secondly, the League position cited by Judge Sweet was directed towards an ad hoc organization created by the dominant political parties to supplant the League in the 1988 presidential debates, not towards debate sponsorship by established media entities such as CNN.
 
 
 36
 Indeed, like the League, the media have endeavored to bill themselves as the debate sponsors of choice. For example, in a June 3, 1992 letter to the CPD (published in a joint ABC, CBS, NBC, CNN press-release) declining cosponsorship of the 1992 Presidential debates, the news divisions of three major broadcast networks and CNN boasted of the three networks' role in Presidential debates dating from the 1960 Nixon-Kennedy debates, which "set a standard for those held ever since." In addition, the Federal Communications Commission has specifically ruled that under governing federal law, broadcast stations may sponsor candidate debates without a cosponsor such as the League, stating that "without in any way denigrating [the] valuable contribution of the League, we are persuaded ... that in many instances a broadcaster may be the ideal, and perhaps the only, entity interested in promoting a debate between candidates for a particular office, especially at the state or local level." In re Geller, 95 F.C.C.2d 1236, 1244-45, aff'd sub nom. League of Women Voters Educ. Fund v. FCC, 731 F.2d 995 (D.C.Cir.1983) (table).
 
 
 37
 Fulani also contends that the Supreme Court's opinion in Northeastern Florida Contractors v. City of Jacksonville, --- U.S. ----, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993), sustains her claim of standing. Northeastern Florida, however, is inapposite. The plaintiffs in that case sought standing in an action challenging a city ordinance that gave preferential treatment to certain minority-owned businesses in the awarding of city contracts. The Court ruled that the injury prong of the standing test was satisfied by plaintiffs' showing that they were prevented from competing on an equal footing for the contracts, and there need not be a demonstration that the plaintiffs would actually have been awarded one of the municipal contracts but for the ordinance. See --- U.S. at ----, 113 S.Ct. at 2303. In this case, Fulani was considered by the League for inclusion in the Debate, but was ultimately excluded. Further, unlike the Northeastern Florida plaintiffs, who had been awarded municipal construction contracts in the past and had a realistic prospect of receiving future contracts if allowed to bid for them, Fulani would have been excluded from the Debate by CNN even if the Federal Defendants had revoked the League's tax exemption (thereby removing the League as a Debate sponsor).
 
 
 38
 Finally, we disagree with Judge Sweet's conclusion in Fulani I, 809 F.Supp. at 1122-23, that Fulani may be accorded "competitive advocate standing" within the meaning of Catholic Conference, 885 F.2d at 1028-31. Catholic Conference requires that to establish such standing, "a plaintiff must show that he personally competes in the same arena with the party [upon] whom the government has bestowed the assertedly illegal benefit." 885 F.2d at 1029.
 
 
 39
 Fulani, a political candidate, and the League, a tax-exempt sponsor of political debates (inter alia ), do not fit within the parameters of this requirement. The district court reached a contrary conclusion because "the League [used] funds that it ha[d] raised through its Sec. 501(c)(3) status to obtain television exposure for Fulani's competitors." Fulani I, 809 F.Supp. at 1123. We decline to extend the rule of Catholic Conference to encompass not only a plaintiff's competitors in a defined arena, but also any entity that provides a tangential benefit to those competitors. As to Fulani's alleged loss of competitive advantage to her competitors, the presidential candidates who appeared in the Debate under the cosponsorship of the League and CNN (as distinguished from the sole sponsorship of CNN), Fulani has not established "that she suffered sufficient injury to establish standing." Catholic Conference, 885 F.2d at 1034 (per curiam, on rehearing).
 
 
 40
 In view of our resolution of the standing issue, we do not address the substantive legality of the defendants-appellees' conduct, or the district court's ruling that it was not empowered to compel the Federal Defendants to revoke the League's Sec. 501(c)(3) status.
 
 Conclusion
 
 41
 The judgment and order from which this appeal is taken are affirmed on the basis that Fulani lacked standing to sue, thereby eliminating subject matter jurisdiction over this action.
 
 
 
 *
 The Honorable Jane A. Restani, of the United States Court of International Trade, sitting by designation
 
 
 [1]
 Pursuant to Fed.R.Civ.P. 25(d), Lloyd Bentsen and Margaret Richardson have been substituted for the original named Federal Defendants in this case, Nicholas Brady and Shirley Peterson, formerly Secretary of the Treasury and Commissioner of Internal Revenue, respectively
 
 
 [2]
 Section 110.13 provides:
 (a) Staging organizations. (1) A nonprofit organization which is exempt from federal taxation under 26 U.S.C. 501(c)(3), and a nonprofit organization which is exempt from federal taxation under 26 U.S.C. 501(c)(4) and which does not endorse, support or oppose political candidates or political parties may stage nonpartisan candidate debates in accordance with 11 CFR 110.13(b) and 114.4(e).
 (2) Broadcasters, bona fide newspapers, magazines and other periodical publications may stage nonpartisan candidate debates in accordance with 11 CFR 110.13(b) and 114.4(e).
 (b) Debate structure. The structure of debates staged in accordance with 11 CFR 110.13 and 114.4(e) is left to the discretion of the staging organization, provided that (1) such debates include at least two candidates, and (2) such debates are nonpartisan in that they do not promote or advance one candidate over another.
 Emphasis added. Section 114.4(e) deals with the funding of such debates and their sponsoring organizations.
 
 
 [3]
 Fulani seizes upon the latter passage as establishing precedential authority for Fulani III in this case, where the alleged injury is "the League's sponsorship" of the Debate that excluded Fulani. We would only reach the issue of redressibility, however, if the threshold "injury" requirement for standing were satisfied. As will appear, the injuries asserted in Fulani III and this case are decisively distinct