**AMERICAN ALLIANCE INSURANCE COMPANY, a/s/o Michael Feidelson, Plaintiff,**

v.

**EAGLE INSURANCE COMPANY, Defendant.**

**No. 94 Civ. 3678 (RWS).**

United States District Court, S.D. New York.

Aug. 31, 1995.

moe Brake & Wheel, Inc./Shimoe Brake & Front End, Inc. ("Shimoe") was a tenant at and occupied space within Feidelson's building. On February 14, 1991, a fire occurred on the premises occupied by Shimoe at Feidelson's building, causing serious and extensive damage.

Eagle Insurance Co. is a New York State insurer specializing in underwriting commercial automobile, private passenger automobile, garage dealer and non-dealer liability coverage. Prior to the date of the fire, February 14, 1991, Eagle had issued garage liability policy number GP911622 to Shimoe for the period September 7, 1990 to September 7, 1991.

### Prior Proceedings

The facts and prior proceedings of this case, and the legal standard for vacating a properly entered default judgment pursuant to Rules 55(c) and 60(b), Fed.R.Civ.P., are set forth in the Opinion, familiarity with which is assumed.

The instant motion for reargument of Eagle's motion to vacate the default judgment was submitted by Eagle on March 28, 1995. Supporting affidavits of the pleadings clerk for in-house counsel to Eagle, Margaret Chiaravalloti ("Chiaravalloti") (sworn to May 15, 1995 (the "Second Chiaravalloti Affidavit")) and the managing attorney of Eagle's legal department, Bonnie Kurtz ("Kurtz") (sworn to May 15, 1995 (the "Second Kurtz Affidavit")), were submitted on May 16, 1995. American filed its reply memorandum on May 15, 1995. The motion was deemed fully submitted on May 17, 1995.

### Discussion

#### Legal Standards

■ Regarding motions for reargument, Local Rule 3(j) provides:

There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked. No oral argument shall be heard unless the court grants the motion and specially directs that the matter shall be reargued orally. No affidavits shall be

Tell, Cheser & Breitbart, New York City (Robert Goodman, of counsel), for plaintiff.

Siff Rosen P.C., New York City (David M. Pollack, Jerome B. Abelman, of counsel), for defendant.

SWEET, District Judge.

Defendant Eagle Insurance Company ("Eagle") has moved pursuant to Civil Rule 3(j) of the Local Rules of the Southern District of New York for reargument of the motion disposed of by the March 15, 1995, opinion of this Court (the "Opinion"). For the reasons discussed below, Eagle's request for reargument is granted, and upon reargument the underlying motion to vacate the default judgment is denied.

### The Parties

American Alliance Insurance Co. ("American"), an Ohio corporation engaged in the business of insurance and authorized to conduct business in the State of New York, prior to February 14, 1991, issued to Michael Feidelson ("Feidelson"), an insurance policy covering loss and damage to his building. Shi-

filed by any party unless directed by the court.

S.D.N.Y.Civ.R. 3(j). Thus, to be entitled to reargument under Local Rule 3(j), the plaintiff must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion. *See Ameritrust Co. Nat'l Ass'n v. Dew,* 151 F.R.D. 237 (S.D.N.Y.1993); *Fulani v. Brady,* 149 F.R.D. 501, 503 (S.D.N.Y.1993), *aff'd sub nom. Fulani v. Bentsen,* 35 F.3d 49 (2d Cir.1994); *East Coast Novelty Co. v. City of New York,* 141 F.R.D. 245, 245 (S.D.N.Y.1992); *B.N.E. Swedbank, S.A. v. Banker,* 791 F.Supp. 1002, 1008 (S.D.N.Y.1992); *Novak v. National Broadcasting Co.,* 760 F.Supp. 47, 48 (S.D.N.Y.1991); *Ashley Meadows Farm, Inc. v. American Horse Shows Ass'n,* 624 F.Supp. 856, 857 (S.D.N.Y.1985).

▆▆ Local Rule 3(j) is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court. *See Caleb & Co. v. E.I. Du Pont De Nemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y.1985). In deciding a Local Rule 3(j) motion, the court must not allow a party to use the motion to reargue as a substitute for appealing from a final judgment. *See Morser v. AT & T Info. Sys.,* 715 F.Supp. 516, 517 (S.D.N.Y.1989); *Korwek v. Hunt,* 649 F.Supp. 1547, 1548 (S.D.N.Y.1986). As such, a party in its motion for reargument "may not advance new facts, issues or arguments not previously presented to the court." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,* 1989 WL 162315, at *3 (S.D.N.Y. Aug. 4, 1989), *rev'd on other grounds,* 967 F.2d 742 (2d Cir.1992).

▆▆ On its motion to reargue, Eagle must establish that this Court overlooked controlling matters of fact or law in its decision to deny Eagle's motion to vacate the default judgment entered August 18, 1994. On the underlying motion to vacate, pursuant to Rules 55(c) and 60(b), Eagle was burdened to satisfy a three-pronged test. Eagle was required to show that: (1) the default was not willful; (2) Eagle had a meritorious defense

against the underlying claim; and (3) setting aside the default would not have prejudiced American, the non-defaulting party. *See Marziliano v. Heckler,* 728 F.2d 151, 156 (2d Cir.1984); *Davis v. Musler,* 713 F.2d 907, 915 (2d Cir.1983).

The basis for Eagle's motion for reargument is that the Court overlooked three affidavits (the "Affidavits") attached to an affidavit of Bonnie Kurtz (sworn to October 26, 1994 (the "First Kurtz Affidavit")) that were submitted by Eagle at oral argument held October 26, 1994. Eagle claims that these Affidavits, from Chiaravalloti (sworn to October 26, 1994 (the "First Chiaravalloti Affidavit")), from the director of Eagle's mail facility, Cathy DeCurtis ("DeCurtis") (sworn to October 25, 1994 (the "DeCurtis Affidavit")) and from the calendar clerk for Eagle's in-house counsel, Francine Palusko ("Palusko") (sworn to October 26, 1994 (the "Palusko Affidavit")) were attached to the First Kurtz Affidavit, yet overlooked by the Court by virtue of the omission in the Opinion of the facts set forth in the affidavits. Eagle also claims that the Court failed to consider photocopies of entries from Chiaravalloti's log book sent to Chambers with a letter dated October 28, 1994.[1]

▆▆ Assuming these factual submissions were duly filed and overlooked, grounds for reargument have been established. However, notwithstanding the Affidavits, Eagle has failed to establish conclusively that its neglect, which led to the August 18, 1994, default judgment, is excusable within the meaning of Rules 55(c) and 60(b). Further, in addition to Eagle's failure to establish excusable neglect, Eagle has failed to establish a meritorious defense to the underlying action.

Thus, Eagle's motion to reargue its motion to vacate the default will be granted, and upon that reargument, denied.

### The Second Chiaravalloti Affidavit and the Second Kurtz Affidavit May Not be Considered in Support of Eagle's Motion for Reargument

▆▆ On a motion to reargue, the moving party asks the court to reevaluate controlling

---

1. Although Eagle contends that all four affidavits were presented to the Court at the October 26, 1994 oral argument, the Court's docket sheet for this case, maintained by the Clerk of the Court, indicates that none of the four affidavits was ever duly filed with the Court, nor were photocopies of Chiaravalloti's log book.

issues of fact or law which were not fully considered when originally submitted by the parties. Pursuant to Rule 3(j), documents and evidence considered in a motion to reargue must have been before the court at the time of the initial motion, and may not be newly submitted for consideration without the court's permission. It has been held that affidavits submitted in violation of Rule 3(j) should be disregarded. *See Chambless v. Masters, Mates & Pilots Pension Plan*, 697 F.Supp. 642, 644–45 (S.D.N.Y.1988), *aff'd in part, rev'd in part on other grounds*, 885 F.2d 1053 (2d Cir.1989), *cert. denied*, 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990). Accordingly, the Second Chiaravalloti Affidavit and the Second Kurtz Affidavit will not be considered in the evaluation of the merits of the instant motion for reargument.

### *Eagle Has Failed to Point to Any Facts or Controlling Law Overlooked by the Court Which Would Have Altered the Disposition of Its Motion to Vacate*

#### *Eagle's Negligence Was Inexcusable*

■ Eagle has failed to point to facts or controlling law overlooked by this Court in its disposition of the underlying motion which, had such fact or law been considered by the Court, would have altered the disposition of the underlying motion.

The testimony proffered in the allegedly overlooked Affidavits fails to establish that Eagle's neglect was excusable. As noted in the Opinion, Eagle was served with a copy of American's complaint (the "Complaint") via service upon the New York Superintendent of Insurance on May 27, 1994. Eagle asserts that on or about June 6, 1994, before this case was assigned to an attorney in Eagle's in-house law office, the Complaint was accidently placed in a file belonging to a companion action which Palusko was tracking for decision of an outstanding motion. The Complaint, Eagle states, remained misfiled from that date until it was discovered after the default judgment had been entered on August 18, 1994.

The facts contained in the allegedly overlooked Affidavits do little more than confirm that the Complaint was indeed misfiled with the file for the companion action. The Affi-davits describe in general terms the office procedure of the mail facility and legal department at Eagle. In so doing, however, they contain no information that contradicts the conclusions of fact contained in the Opinion. Indeed, the Opinion accepted as a matter of fact that the Complaint had been misfiled in the manner asserted by Eagle. The Opinion did not rest on whether or not the misfiling had occurred, or even on whether the misfiling was understandable.

Instead, the Opinion stated that the apparent absence of procedural safeguards, including an effective docket or calendar system, constituted inexcusable neglect. The facts contained in the Affidavits fail to address these inadequacies. Chiaravalloti describes logging in summons and complaints manually and entering data into Eagle's computer system, but she does not describe the system further. The Chiaravalloti log book suggests further that some sort of logging system exists, but its system or mechanism is not described in her affidavit. Although the Affidavits allude to systems designed to provide safeguards, those protective measures are described only in the broadest detail, begging the question of their effectiveness. Thus, although the Affidavits make the misplacement of the Complaint more comprehensible, they fail to provide an excuse for Eagle's neglect.

Even given the benefit of the content of the Affidavits, Eagle fails to explain adequately how the Complaint remained unnoticed in the file of an active case. The fact that this error went undetected for over two months cannot be considered excusable. The Affidavits do not address this point.

Most troubling is the fact that Eagle has failed to explain effectively how two notices of reassignment sent to its Lynbrook office went unnoticed. On June 8, 1994, a letter was sent to Eagle stating that the action had been reassigned from the U.S. District Courthouse in White Plains to the Foley Square Courthouse. That letter was followed by a second letter dated July 6, 1994, notifying Eagle that the action had been reassigned from the Court of the Honorable Charles L. Brieant to this Court. Apparent-

ly, these two letters evaded the attention of Eagle while the Complaint remained misfiled. The Affidavits provide no explanation for this negligence.

■ Eagle has failed to point to any controlling law overlooked by this Court in the Opinion requiring that evidence of such continuing neglect and repeated clerical errors be treated as "excusable neglect" under the Federal Rules. Rule 60(b) may be invoked in instances of excusable neglect, but not in instances of gross negligence on the part of the movant seeking to vacate the default. *See Greenspahn v. Joseph E. Seagram & Sons, Inc.*, 186 F.2d 616, 619 (2d Cir.1951); *see also Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir.1990) (carelessness of a litigant does not afford basis for relief under Rule 60(b)).

Eagle argues that some clerical confusion may be attributed to the fact that mail received at its Lynbrook office is forwarded to its office in Uniondale, as described in the DeCurtis Affidavit. However, failure by a professional law office to maintain an effective system for receiving and responding to litigation-related correspondence mailed to the firm's address of record is hardly excusable. In *Robinson v. Bantam Books, Inc.*, 49 F.R.D. 139, 141 (S.D.N.Y.1970), the court expressly rejected the argument that "interoffice confusion resulting from multi-office corporate enterprises, plus the added confusion resulting from inter-corporate agreements, should automatically excuse failure to meet the time requirements of the Federal Rules of Civil Procedure."

In sum, even if it were to be conceded that the Affidavits had, in fact, been before the Court and overlooked, Eagle has still failed to indicate any fact or law that supports its argument that its negligence is excusable and thereby require that its original motion for vacatur be granted.

### Eagle Has Failed to Provide a Meritorious Defense

■ Even if Eagle's neglect were excusable, its motion to vacate would fail on reargument, as Eagle lacks a meritorious defense. As noted in the Opinion, in order to establish a meritorious defense, Eagle must demonstrate that the insurance policy was properly cancelled by mailing or delivering written notice to both the insured and its broker at least fifteen days before cancellation. No controlling matters of fact or law related to this matter were overlooked in the Opinion. The allegedly overlooked Affidavits and log book do not address the insurance policy. Further, although Eagle argues that "evidence was misconstrued by the court" with regard to the existence of a meritorious defense, Eagle does not assert that any matters of fact or law were overlooked.

Therefore, the assessment in the Opinion that Eagle lacks a meritorious defense remains unchanged. Eagle has provided insufficient evidence to establish that it gave effective notice of cancellation. In support of its contention that the notice was effectively mailed, Eagle offers two affidavits by David Isenberg ("Isenberg"), president of DCW Auto Agency, Inc., the managing agent for Eagle's commercial garage liability policies. The September 2, 1994, Isenberg affidavit omits any mention of notice to Shimoe's broker, ASE Corp. ("ASE"). The November 11, 1994 affidavit (the "Second Isenberg Affidavit") alleges that notice of cancellation was mailed to ASE.

Where an insurer seeks to establish that a cancellation notice was mailed, and where

> proof exhibits an office practice and procedure followed by the insurers in the regular course of their business, which shows that the notices of cancellation have been duly addressed and mailed, a presumption arises that those notices have been received by the insureds.... [I]n order for this presumption to arise, office practice must be geared so as to ensure the likelihood that a notice of cancellation is always properly addressed and mailed.

*Nassau Ins. Co. v. Murray*, 46 N.Y.2d 828, 414 N.Y.S.2d 117, 386 N.E.2d 1085, 1086 (1978) (citations omitted). Isenberg does discuss Eagle's office practice, but in terms too vague and limited to demonstrate that notice was properly addressed and mailed to brokers. Isenberg states that:

> It is the office policy of DCW Auto Agency, Inc. to prepare a certificate of mailing

to evidence when notices of cancellation are mailed to named insureds. That certificate is stamped by the United States Post Office to indicate the date that such mail was received by the post office.... It is not the policy and practice of my office to maintain certificates of mailing to the brokers on these policies. The only record of mailing to brokers maintained by this office is the actual notation on the notice of cancellation.

Thus, Isenberg's affidavits fail to evidence proper mailing to brokers. In addition, the affidavits fail to demonstrate proper addressing to either brokers or other parties.

Similar affidavits, based only on first-hand knowledge of office procedures and speculation as to actual events, have been held insufficient to establish that a cancellation notice has been mailed. In *L.Z.R. Raphaely Galleries, Inc. v. Lumbermens Mutual Casualty Co.*, 191 A.D.2d 680, 595 N.Y.S.2d 802, 804 (2d Dep't.1993),

the only evidence produced with respect to the mailing procedures used by [the insurer] was the affidavit of ... an employee whose statements with respect to the mailing procedures utilized were premised largely upon "information and belief". There was no affidavit from an employee at the actual mailing location who could attest first-hand to the methods and procedures utilized by [the insurer] in order to ensure that the notices are "always properly addressed and mailed." Specifically, the respondents failed to offer proof that an employee normally checked the names either on the notices or on a master list of insureds who have defaulted in payment. (citations omitted).

Similarly, the Court in *Worldwide Underwriters Insurance Co. v. Lumbermens Mutual Casualty Co.*, 181 A.D.2d 784, 581 N.Y.S.2d 93 (2d Dep't.1992), found a "cancellation mailing register", which indicated that a piece of mail addressed to the insured had been received by the post office, insufficient to establish that the policy had been properly cancelled. An employee testified that the mailing contained a cancellation notice. However, the employee could not affirm that the certificate of mailing reflected that the alleged notice was received by the insured, nor that the certificate of mailing proved the contents of the mailing.

Thus, although it is the case that "[U]nder New York law, personal knowledge [of mailing procedures] is required only to establish regular office procedure, not the particular mailing," *Leon v. Murphy*, 988 F.2d 303 (2d Cir.1993), Isenberg's affidavit fails to present sufficient knowledge of the office procedures required for proper notice.

In sum, Eagle has failed to indicate any fact or law that presents a meritorious defense and thereby requires, even if its neglect was excusable, that the original motion for vacatur be granted.

### Conclusion

Eagle originally failed to demonstrate the kind of extraordinary circumstances that justify vacatur under Rule 60(b), *See Mendell In Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir.1990), *aff'd sub nom. Gollust v. Mendell*, 501 U.S. 115, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991). Without considering the presence or absence of prejudice to American, Eagle has failed to point to any overlooked fact or controlling law which would have, if considered, required any conclusion other than that Eagle's neglect was inexcusable and that it failed to provide a meritorious defense.

For all of the reasons discussed above, Eagle's motion for reargument is hereby denied.

It is so ordered.