**Wilfredo MATOS, Thelma Perkins and Nirma Reyes**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al.**

No. CIV. 3:96CV2060 (RNC).

United States District Court,
D. Connecticut.

Sept. 29, 1997.

Wilfredo Matos, Bridgeport, CT, pro se.

Thelma Perkins, Bridgeport, CT, pro se.

Nirma Reyes, Bridgeport, CT, pro se.

William A. Collier, U.S. Attorney's Office, Hartford, CT, Edward Eitches, U.S. Dept. of Housing & Urban Development, Office of General Counsel, Washington, DC, Heather Wilson, Richard J. Lynch, Attorney General's Office, Health & Human Services, Hartford, CT, Arthur C. Láske, III, Trumbull, for HUD, Henry G. Cisneros, Secretary, HUD, Andrew Cuomo, Asst. Sec. for Community Planning & Development, HUD, HHS, Donna Shalala, Sec. of HHS, Joyce Thomas, Commission, Dept of Social Services, Dept. of Social Services, Joseph P. Ganim, Mayor, City of Bridgeport, Bridgeport City Council, City of Bridgeport, John G. Rowland, Governor, State of Connecticut, defendants.

## ORDER

CHATIGNY, District Judge.

After Review and over objection, the Magistrate Judge's recommended ruling is hereby approved and adopted.

So ordered.

*RULING ON DEFENDANTS'*
*MOTIONS TO DISMISS*

FITZSIMMONS, United States
Magistrate Judge.

Plaintiffs bring this lawsuit *pro se* as directors of the Community Collaborative of Bridgeport ("CCB"), seeking declaratory and injunctive relief against various federal and state defendants in connection with the disbursement of $2.96 million in federal funding earmarked for the City of Bridgeport.

Pending are Motions to Dismiss [Doc. # 21, 29, 30, 33] pursuant to Fed.R.Civ.P. 12(b)(1) filed by the United States Department of Housing and Urban Development ("HUD"), HUD Secretary Andrew Cuomo,[1] the United States Department of Health and Human Services ("HHS"), HHS Secretary Donna Shalala, Bridgeport Mayor Joseph P. Ganim, the City Council of Bridgeport, the City of Bridgeport, the State of Connecticut, the Connecticut Department of Social Services, Governor John Rowland and Social Services Commissioner Joyce Thomas, all named as defendants.[2] Defendants contend that plaintiffs lack standing to bring this action and this Court therefore lacks subject matter jurisdiction to address the merits of this lawsuit. For the reasons that follow, Defendants' Motions to Dismiss [Doc. 21, 29, 30, and 33] are **GRANTED**.

*STANDARD*

■ A party may move to dismiss for lack of subject matter jurisdiction at any time during the course of an action. Rule 12(b)(1), Fed.R.Civ.P.; Rule 12(h)(3), Fed.R.Civ.P.; *John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.*, 588 F.2d 24, 27 (2d Cir.1978), *cert. denied*, 440 U.S. 960, 99 S.Ct.

1502, 59 L.Ed.2d 773 (1979); *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979). Generally, litigants cannot waive subject matter jurisdiction by express consent, conduct, or estoppel. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3522, at 66–67.

Once subject matter jurisdiction is challenged, the burden of establishing it rests on the party asserting jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Grafon*, 602 F.2d at 783. However, unlike dismissals pursuant to Rule 12(b)(6), dismissals for lack of subject matter jurisdiction are not predicated on the merits of the claim. *Exchange Nat. Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130–31 (2d Cir.1976), *cert. denied*, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984).

In deciding a motion to dismiss for lack of subject matter jurisdiction, the court construes the complaint broadly and liberally in conformity with the principle set out in Federal Rule 8(f), "but argumentive inferences favorable to the pleader will not be drawn." 5A Wright & Miller, *Federal Practice and Procedure*, § 1350, at 218–219. The mover and the pleader may use affidavits and other materials beyond the pleadings themselves in support of or in opposition to a challenge to subject matter jurisdiction. *Land v. Dollar*, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Exchange*, 544 F.2d at 1130. However, "[i]f the jurisdictional allegations of the complaint are complete, uncontradicted, and

1. Plaintiffs sued HUD Secretary Henry G. Cisneros and HUD Assistant Secretary Andrew Cuomo in their official capacities; however, since Mr. Cuomo has replaced Mr. Cisneros as Secretary of HUD, the Court shall only consider the claims against Mr. Cuomo in his official capacity.

2. Judge Chatigny referred these motions to a magistrate judge in November, 1996 and March, 1997. [Doc. 19, 44].

In addition to defendants' Motions to Dismiss [Doc. 21, 29, 30 and 33], the court has considered Memoranda in Support [Doc. 16, 31], plaintiffs' Memorandum in Opposition [Doc. # 32], defendants' Reply Memorandum in Support [Doc.

# 41], plaintiffs' Supplemental Memorandum in Opposition [Doc. # 44] and an Affidavit of Wilfredo Matos [Doc. # 2]. Plaintiffs were given additional time to file their papers since they are appearing *pro se*.

The United States Department of Health and Human Services ("HHS") and HHS Secretary Donna Shalala rely on the Memorandum of Law submitted by HUD [Doc. # 29]. The State of Connecticut, the Connecticut Department of Social Services, Governor John Rowland and Social Services Commissioner Joyce Thomas join in the memoranda of law submitted by HUD and the City of Bridgeport [Doc. # 33].

sufficient, the court must overrule a motion directed merely at the language of the pleading." 5A Wright & Miller, *Federal Practice and Procedure* § 1350, at 223.

At issue is whether plaintiffs have standing to bring this lawsuit.

*BACKGROUND*

The Secretary of HUD designated Bridgeport as a federal Enterprise Community ("EC") in December of 1994, making the City eligible for $2.95 million in federal funding. [Doc. # 23 Amended Complaint ¶¶ 1, 26].[3] The strategic plan submitted to HUD called for creation of the "Community Collaborative of Bridgeport" ("CCB") to act as the "permanent, non-partisan governance structure" to implement the strategic plan. *Id.* In January 1995, the CCB adopted by-laws creating a board of directors "consist[ing] of residents, organizational and institutional stakeholders, and city and state officials." [Doc. # 2 Matos Aff. Ex. 2, Art. IV, § 2(a)]. Under the by-laws, the "number of CCB members shall not exceed fifty (50)" and "[t]he composition of the CCB Board shall reflect the ethnic, racial, age and gender makeup of the city." *Id.* Art IV, § 2(b)(c). The CCB was incorporated as a non-profit, non-stock Connecticut corporation. ¶¶ 5, 29. The current CCB board of directors has 45 members including plaintiffs. ¶¶ 5–7.

In June 1996, the City of Bridgeport amended its strategic plan to substitute a new EC governance structure, the "Bridgeport Enterprise Community Partnership" ("BECP"). [¶ 47; Doc. # 16, Ex. A, ¶ 4]. Plaintiffs challenge the legitimacy of the BECP and its authority to distribute the federal funding in place of the CCB on whose board plaintiffs serve. This is fundamentally a political dispute about who will decide how the federal funds are spent in the community.

*DISCUSSION*

Defendants contend that plaintiffs lack standing to bring this action for declaratory and injunctive relief because plaintiffs' pleading is "devoid of any allegation that they have been authorized to bring suit on behalf of the CCB." [Doc. # 16 at 7]. The Court

agrees that plaintiffs' failure to allege authority from the CCB to act on its behalf is fatal to plaintiffs' standing to sue.

Article III of the United States Constitution limits the "judicial power" of federal courts to "cases" and "controversies." "The requirements of Article III are not satisfied merely because a party requests a court of the United States to declare its legal rights. . . ." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry . . . is founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Thus, the standing requirement "focuses on the party seeking to get his complaint before the federal court and not on the issues he wishes to have adjudicated." *Valley Forge,* 454 U.S. at 471; *Fulani v. Bentsen,* 35 F.3d 49, 51 (2d Cir. 1994) (same); *Santiago v. Miles,* 774 F.Supp. 775, 788 (W.D.N.Y.1991) ("axiomatic that inquiry into a plaintiff's standing is independent of the merits of the claim").

■ The party invoking federal jurisdiction bears the burden of establishing that it has standing, and must "clearly . . . allege facts demonstrating that it is a proper party to invoke judicial resolution of the dispute." *United States v. Hays,* 515 U.S. 737, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995) (internal quotation marks and citations omitted). Where, as here, a plaintiff is not the object of the government action or inaction being challenged, the plaintiff's burden as to standing is "substantially more difficult" to meet. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 562, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted).

■ It is by now well settled that "the irreducible constitutional minimum of standing contains three elements."

---

**3.** All subsequent ¶ references are to the amended complaint.

First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan,* 504 U.S. at 560–61 (1992) (internal quotation marks and citations omitted); *United States v. Hays,* 515 U.S. 737, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995).

In this case, plaintiffs fail to allege that they have suffered an "actual injury" as a result of alleged illegal conduct of the defendants. Every plaintiff must "show that he has personally suffered some actual injury as a result of the putatively illegal conduct of the defendant," that the injury "fairly can be traced to the challenged action," and that the injury "is likely to be redressed by a favorable decision." *Valley Forge Christian College,* 454 U.S. at 472 (internal quotation marks and citations omitted); *see also Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (plaintiff must demonstrate a "personal stake in the outcome" of a case).

Clearly, plaintiffs filed this lawsuit seeking relief for the CCB's benefit.[4] Their complaint alleges that "[t]he CCB itself cannot appear as a party to this action, since it does not have the resources to hire an attorney and has not been able to obtain pro bono

counsel, despite exhaustive efforts." [¶ 5]. Significantly, plaintiffs fail to allege that they are authorized by the CCB to bring this lawsuit on its behalf.[5] However well-meaning, plaintiffs do not represent the CCB, being only three of CCB's forty-five directors, acting without authority to sue the various state and federal defendants on behalf of the corporation. To establish standing a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties." *Valley Forge,* 454 U.S. at 474 (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

Plaintiffs describe their claim as "challenging unilateral government action removing them completely and conclusively from power over the agreed to strategic plan via an amendment which puts in place a wholly mayoral appointed body." [Doc. # 44 at 9]. This injury is insufficient to confer individual standing under Article III. The Supreme Court has repeatedly "rejected claims of standing predicated on the right possessed by every citizen, to require that the Government be administered according to law." *Id.* at 482–83. "[A]n asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen v. Wright,* 468 U.S. 737, 754, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984 ). The alleged injury claimed in this lawsuit was to the CCB. The CCB was named as the governing body under the strategic plan and it, not individual plaintiffs, was allegedly removed from power by the challenged government conduct. The Court has reviewed the other injuries alleged by plaintiffs and finds them similarly deficient.[6]

---

4. For example, plaintiffs seek a declaratory judgment that (1) "CCB is the permanent, governance structure for the Plan and the recipient-to-be ... and manager of the federal Enterprise Community funds;" (2) "CCB is the lead entity for the Enterprise Community program and must approve any amendment of the Plan;" (3) "HUD and HHS must recognize the CCB as the governance structure of the Plan ...;" (4) "HUD must enter into direct negotiations with the CCB towards establishing the benchmarks for the Plan in a Memorandum of Agreement;" (5) "the State of Connecticut must also recognize the CCB as the Plan's governance structure and its role as the recipient of the Enterprise Community funds

from the State;" and (6) "the State of Connecticut must negotiate and enter into a contract with the CCB specifying the timing and manner by which the Enterprise Community funds will be forwarded to the CCB." [Amend. Compl. at 28].

5. Defendants point out that plaintiffs "comprise just three of the forty-five current directors of CCB" or "6.7%" of the CCB Board. [Doc. # 16 at 6, Doc. # 41 at 3].

6. For example, plaintiffs claim of standing based on the "loss of power/vote over the strategic plan." Plaintiffs are directors of a corporation.

52

Accordingly, plaintiffs have not demonstrated that they have standing to bring this action.

*CONCLUSION*

For the reasons stated, Defendants' Motions to Dismiss [**Doc. 21, 29, 30, and 33**] are **GRANTED.**

Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of this order. Failure to object within ten (10) days may preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; *Small v. Secretary of H.H.S.*, 892 F.2d 15 (2d Cir.1989)(per curiam); *F.D.I.C. v. Hillcrest Assoc.*, 66 F.3d 566, 569 (2d Cir.1995).

September 5, 1997.

Yet, no government action has interfered with their "power/vote" within the CCB. Similarly, plaintiffs cannot allege that they were "removed from power" as directors of the corporation. Rather the power of the corporation has been diminished by the government action they seek to challenge.