**VIACOM INTERNATIONAL, INC., Plaintiff,**

v.

**LORIMAR PRODUCTIONS, INC., Defendant.**

**No. 79 Civ. 6735.**

United States District Court, S. D. New York.

Feb. 25, 1980.

Hughes, Hubbard & Reed, New York City, for plaintiff; John A. Donovan, Ronald J. Tabak, Robert J. Gerrard, Jr., Ronald Lightstone, David A. Dreilinger, New York City, of counsel.

Hess, Segall, Guterman, Pelz & Steiner, New York City, for defendant; Thomas F. Ryan, New York City, of counsel.

## OPINION

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

The plaintiff, Viacom International Inc. ("Viacom"), is a worldwide distributor of television programs whose business includes the domestic rerun distribution of television programs after their network run is completed and the distribution for foreign television exhibition. The defendant, Lorimar Productions Inc. ("Lorimar"), is a producer of programs for television and only recently, several years after the parties were operating under their agreement referred to hereinafter, entered into the distribution business.

Plaintiff commenced this action against the defendant for a declaratory judgment that it is entitled to the worldwide distribution rights to two 2-hour programs ("Sybil" and "Helter Skelter") and enjoining the defendant from claiming ownership of or purporting to distribute anywhere in the world the television rights in the form they appeared on United States television networks, in the form they appeared in movie theaters, or in any other form.[1]

---

1. Originally the matter was presented to this Court on plaintiff's motion for a preliminary injunction enjoining the defendant from claiming ownership or distribution rights to the two programs. Upon the hearing the Court suggested, and the parties agreed, that pursuant to

The issues arise under a contract entered into between the parties and the basic dispute thereunder is whether the programs "Sybil" and "Helter Skelter" are "television movies," as plaintiff contends, in which event, it acquired worldwide distribution rights thereto under paragraph 4 of the agreement, or are "mini-series" as defendant contends, in which event, under paragraph 5(E) there was to be a first negotiation and first refusal with respect to the worldwide distribution rights to such mini-series.

The contract was the subject of extended negotiation between the plaintiff's and defendant's representatives and finally was agreed upon and became effective as of January 1, 1974. The contract provides:

    1. Viacom shall have exclusive, perpetual television distribution rights . . to all series and programs (including made-for-television movies) that are initially broadcast during the three-year period commencing as of the date hereof.

    2. The territory for which we [Viacom] acquire these rights is the world with respect to made for television movies and with respect to series the territory shall be the world excluding the U.S. network territory.

    3. We [Viacom] are acquiring these rights in perpetuity.

Under the agreement Viacom received distribution rights to all Lorimar television programs initially broadcast during the three-year period beginning January 1, 1974. Payment for the rights acquired and, in some instances, the extent of the rights secured varied according to the type of program. The evidence establishes there were three categories of programs. The first category was made-for-television movies (television movies)—programs on film consisting of either one or two segments of at least 90 minutes in length. Paragraph 4 of the contract headed "Television movies" is the governing provision. As to this catego-

ry, Viacom was to deduct from the distribution gross proceeds 35% for domestic distribution and 40% for foreign distribution and the balance, less expenses, was Lorimar's share.[2] Viacom guaranteed "that [Lorimar's] share shall equal at least $90,000 with respect to each 90-minute movie and at least $100,000 with respect to each movie two hours or greater in length." The guarantee payments were to be made at pre-fixed times.

The second category was a television series—a program containing no less than 13 original 30– or 60–minute episodes. In this instance, Viacom received foreign distribution rights and exclusive first negotiation rights with respect to domestic distribution following network cancellation of any series. With respect to foreign distribution guarantees were provided for according to a schedule.

The third category was a mini-series defined in paragraph 5(E) "as a fictionalized film series (as opposed to an Eleanor and Franklin) carrying an annual network commitment of less than 13 original episodes." Here it was further provided that "in lieu of distributing individual episodes" Lorimar had the option to provide Viacom "with up to two movies of each mini-series, either 90 minutes or two hours (or longer) in length which are representative of the series" in which event "such movies shall be deemed television movies and the terms set forth in paragraph 4 [television movies] shall govern the distribution of same."

"Helter Skelter" and "Sybil" were produced by Lorimar and were initially broadcast within the contract period. "Helter Skelter" was first broadcast over CBS television on April 1 and 2, 1976 and "Sybil" was first broadcast over the NBC television network on November 14 and 15, 1976. Each was in the form of two 2-hour telecasts. Prior to their initial United States broadcasts, Lorimar delivered to Viacom the "pre-print elements" necessary to make

---

Rule 65(a)(2) of the Federal Rules of Civil Procedure the trial of the action on the merits be advanced and consolidated with the hearing of the application for a preliminary injunction.

**2.** This provision, at Lorimar's request, was later modified so that Viacom and Lorimar shared the gross receipts on a 50–50 basis.

the movies "Helter Skelter" and "Sybil" in that form for distribution. Those deliveries by Lorimar were pursuant to paragraph 4(E) which concerns only "television movies." Viacom has been distributing "Sybil" and "Helter Skelter" for more than three years. It has made sales of the movies in 17 countries (on five continents), Puerto Rico and Hong Kong. Viacom has paid during 1977, 1978 and 1979 up to the commencement of this action over $228,000 to Lorimar as its share of the distribution proceeds based on domestic and international sales of the two programs by Viacom.

■ The parties were in harmonious relationship over an extended period during which they treated the programs as television movies and Lorimar recognized Viacom's exclusive distribution rights to "Sybil" and "Helter Skelter." That relationship and understanding was abruptly terminated in and about August 1979 and this litigation fomented by an attorney engaged at Lorimar, as its Vice President and General Counsel, almost 5 years after the contract had been entered into between the parties and was in effective operation, who was of the view that the programs were mini-series. However, I reject his testimony as a purported expert in the industry. Also, the clear language of paragraph 5(E) itself and the parties' conduct in carrying out the agreement[3] thereunder requires rejection of his testimony. The defendant, as was its option under paragraph 5(E), elected to provide plaintiff with "two movies of each mini-series, either 90 minutes or two hours (or longer) in length which are representative of the series." They were, therefore, to "be deemed television movies and the terms set forth in paragraph 4 [governed] the distribution of same." By its action with respect to "Sybil" and "Helter Skel-

ter," Lorimar made paragraph 4 the operative provision.

■ The substantial and overwhelming weight of the evidence, including the conduct of the parties from the effective date of the agreement, January 1, 1974, and from the time defendant provided Viacom with the two 2-hour programs of "Sybil" and "Helter Skelter," supports plaintiff's claim that they are television movies governed by paragraph 4 of the agreement and that plaintiff is entitled to the exclusive distribution rights provided for therein. Significantly, the plaintiff paid and the defendant accepted the guarantees provided for in the agreement for a television movie—a guarantee far in excess of any payment required if in fact the programs are mini-series.

Apart from the contract provision and the practical construction by the parties as indicated by their course of dealings thereunder, the evidence supports a further finding that under the custom and usage of the industry the two 2-hour films, "Sybil" and "Helter Skelter," are television movies. Moreover, defendant itself, in public advertisements, so categorized them. The record is replete with numerous instances, oral and written, wherein defendant recognized that paragraph 4, which applies to television movies, is the governing provision. Defendant's present position not only flies in the face of overwhelming proof that defendant delivered the programs as television movies and received added financial benefits by reason thereof, but suggests a brazen attempt to avoid a firm commitment which it accepted for more than five years.

The house counsel responsible for this litigation was not a party to the negotiations leading to the contract, had no knowl-

---

**3.** The practical interpretation of a contract by the parties, manifested by their conduct subsequent to its formation for any considerable length of time before it becomes a subject of controversy, is entitled to great, if not controlling weight in the construction of the contract. *See Old Colony Trust Co. v. City of Omaha*, 230 U.S. 100, 118, 33 S.Ct. 967, 972, 57 L.Ed. 1410 (1913); *Sanchez v. Maher*, 560 F.2d 1105, 1108 (2d Cir. 1977); *Cordingley v. Allied Van Lines,*

*Inc.*, 563 F.2d 960, 964 n.9 (9th Cir. 1977); *Madawick Contracting Co. v. Travelers Ins. Co.*, 307 N.Y. 111, 120 N.E.2d 520 (1954); *Webster's Red Seal v. Gilberton World-Wide*, 67 A.D.2d 339, 340, 415 N.Y.S.2d 229, 230 (1st Dep't 1979); *In re Field's Will*, 11 A.D.2d 774, 775, 204 N.Y.S.2d 947, 949 (2d Dep't 1960); *Battista v. Carlo*, 57 Misc.2d 495, 496, 293 N.Y. S.2d 227, 229 (S.Ct.1968).

edge of the practical interpretation of its provisions by the parties themselves during the three-year period when they deemed the programs television movies, and during which defendant received the guarantee for that category. It is rather significant that no officer or employee who either played a role in the negotiations leading to the contract or who were participants during the period that "Sybil" and "Helter Skelter" were produced and made available to plaintiff or who had knowledge of the basis on which payments therefor were received by the defendant, were called as witnesses by defendant to challenge plaintiff's version nor was any explanation made for their lack of testimony on this subject, whether upon trial or by way of deposition.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

Judgment may be entered accordingly.