Randy SCHEINER, Royce Scheiner, Cindy Royce Creations, Inc. and Maximus Creations Limited, Plaintiffs,

v.

Derek WALLACE, Brian Daniels, Paul Hunt, and David Williams, sued on their own behalf and on behalf of all other Lloyd's Underwriters subscribing to Policy Numbers ZJB8901346 251NM and ZJB900233 255M, White, Fleischner, Fino & Wade, Dennis Wade, Holmes Protection of New York, Inc., Hartley Cooper Associates, Ltd., Levmore–Finch, Inc., Graham Miller, Inc., Shaun Coyne, Karl Alizade, City Safe, Inc. and J.M. McNicholas, Defendants.

No. 93 Civ. 0062 (RWS).

United States District Court, S.D. New York.

Feb. 11, 1997.

Hein Hazenberg, Alan P. Rosefielde, New York City, and Robert P. Frankel, Miami, FL, for Plaintiffs.

Morvillo, Abramowitz, Grand, Iason & Silberberg, New York City; Michael C. Silberberg and Jason Pickholz, of counsel, for Omnibus Defendants.

## OPINION

SWEET, District Judge.

Plaintiffs, Randy Scheiner, Royce Scheiner, Cindy Royce Creations, Inc. and Maximus Creations, Limited, have moved, pursuant to Local Rule 3(j), to reargue this Court's opinion dated September 4, 1996 granting summary judgment in favor of Defendants Derek Wallace, Brian Daniels, Paul Hunt, David Williams, Lloyd's Underwriters Subscribing to Policy Numbers ZJB8901346, 251NM and ZJB900233 255M, White, Fleischner, Fino & Wade, Graham Miller, Inc., Shaun Coyne, Karl Alizade, City Safe, Inc. and John M. McNicholas (the "Omnibus Defendants"). Plaintiffs have also moved, pursuant to Fed. R.Civ.P. 59(e), to amend the judgments entered pursuant to the Opinion.

For the reasons set forth below, the Plaintiffs' motions will be denied.

### The Parties

Cindy Royce and Maximus are New York corporations with offices in New York City and a primary business of the manufacture and sale of jewelry.[1]

Samuel Scheiner, who is not a party to this action, was at all times relevant to this action Secretary, Treasurer, and fifty-percent shareholder of Cindy Royce and Secretary, Treasurer and one-third owner of Maximus. Samuel Scheiner supervised the overall operations and finances of both Cindy Royce and Maximus.

Randy Scheiner is a New York citizen residing in Cedarhurst, New York. He was a salesman for Maximus. He is the son of Samuel Scheiner and Plaintiff Royce Scheiner, the wife of Samuel Schiener.

Derek Wallace ("Wallace"), Brian Daniels ("Daniels"), Paul Hunt ("Hunt"), and David Williams ("Williams") are citizens of the United Kingdom, with their principal place of business in London, England. (Wallace, Daniels, Hunt, and Williams are, collectively, the "Lloyd's Defendants" or the "Underwriters"). As Lloyd's underwriters, they subscribed to the insurance policies in this case.

White, Fleischner, Fino & Wade ("White Fleischner" or "WFFW"), a law firm, is a general partnership organized and existing under the laws of the State of New York and was, at all times relevant to this action, New York counsel for the Lloyd's Defendants. Attorneys at White Fleischner are licensed to practice law in the State of New York.

Prior to becoming a partner in White Fleischner, Dennis Wade ("Wade") was employed first as an Assistant District Attorney and later as Deputy Chief of the Rackets Bureau in the New York County District Attorney's Office.

Holmes Protection of New York ("Holmes") is a corporation organized and existing under the laws of New York. At times relevant to this action, Holmes was under contract to provide security services to Cindy Royce and Maximus.

Hartley Cooper Associates, Ltd. ("Hartley Cooper"), an insurance brokerage, is an English corporation with its principal place of business in England. Hartley Cooper acted as a "placing broker" by placing primary and excess insurance policies on the London market for Cindy Royce and Maximus.

Levmore–Finch, Inc. ("Levmore–Finch"), an insurance brokerage, is a New York corporation having its principal place of business in New York City.

Graham Miller, Inc. ("Miller") is an adjustment firm retained by Lloyd's. Shaun Coyne ("Coyne") is a loss adjuster at Miller.

City Safe, Inc. ("City Safe"), a New Jersey corporation, has its principal place of business in New Jersey and New York. The firm provides safe expertise for Lloyd's. Karl Alizade ("Alizade") is a principal of City Safe.

While employed as a detective with the New York City Police Department, John M. McNicholas ("McNicholas") helped investigate the reported burglary of the premises of Cindy Royce and Maximus that underlies this action.

---

1. Cindy Royce filed a bankruptcy petition under chapter 11, Title 11 of the Bankruptcy Code on December 11, 1996 and Maximus filed a bankruptcy petition under chapter 7 of the Bankruptcy Code on December 10, 1996.

### Facts and Prior Proceedings

The facts and prior proceedings of this action are set forth in the previous opinions of this Court, *Scheiner v. Wallace*, 93 Civ. 62, 1996 WL 633418 (S.D.N.Y. Oct. 31, 1996) ("*Scheiner IV*");[2] *Scheiner v. Wallace*, 1995 WL 464944 (S.D.N.Y. Aug. 4, 1995) ("*Scheiner III*"); *Scheiner v. Wallace*, 860 F.Supp. 991 (S.D.N.Y.1994) ("*Scheiner II*"); *Scheiner v. Wallace*, 832 F.Supp. 687 (S.D.N.Y.1993) ("*Scheiner I*"), familiarity with which is assumed.

On January 5, 1989, underwriters from Lloyd's issued Jewelers' Block Policy No. ZJB8901346 252NM to Plaintiffs Cindy Royce and Maximus for a premium of $110,-000.00. The policy insured Cindy Royce and Maximus for a period of 12 months, beginning July 10, 1989, against loss by theft up to a maximum of $2,500,000.00, with a $25,-000.00 deductible. On February 9, 1989, Plaintiffs paid a $9,500.00 premium for an additional "excess policy" for losses in excess of $2,500,000.

On August 18, 1989, while both policies were still in effect, the premises of Cindy Royce and Maximus were allegedly burglarized. At the time of the alleged burglary, the premises of Cindy Royce and Maximus were protected by Holmes pursuant to a series of written agreements. McNicholas was chiefly responsible for investigating the burglary for the New York City Police Department.

On November 2, 1989, Samuel Scheiner, in his capacity as Secretary/Treasurer for Cindy Royce and Maximus, filed a Proof of Loss with Lloyd's for more than $5 million, which was rejected by Lloyd's on December 19, 1989.

On February 7, 1990, Cindy Royce and Maximus filed a law suit in London against Lloyd's for breach of contract (the "English Action"). In defense, Lloyd's alleged: (1) an employee or a principal of Cindy Royce and Maximus had been dishonestly involved in the burglary, which involvement entitled the Underwriters to refuse to make payment under the false swearing clause; (2) the Underwriters were entitled to reject the Proof of Loss, because there had been no burglary, the outer vault door having been "torched" while in the open position and other evidence reasonably indicating that the theft had been staged and perpetrated by someone on the inside with access to the premises, alarm system, safe and vault combinations; (3) Samuel Scheiner had fraudulently been involved with the burglary; (4) Cindy Royce and Maximus had breached the policies by failing to properly maintain a detailed and itemized inventory of their property; (5) Cindy Royce and Maximus had fraudulently inflated the amount of their claim; (6) Cindy Royce and Maximus had breached a condition of their policies by keeping inadequate records; and (7) Cindy Royce and Maximus had committed a variety of breaches of warranty, misrepresentations, and nondisclosure, which entitled the Underwriters to avoid their policies.

The English Action began on April 23, 1991. The English judge, Justice Waller, traveled to New York, visited the premises and the vault and safe. On October 2, 1991, the thirtieth day of trial, the Plaintiffs asked for a discontinuance on terms that they would not bring other proceedings elsewhere and that the court should order costs accordingly. Justice Waller denied the application for a discontinuance. The next day, the Plaintiffs abandoned their claims, and Justice Waller entered a dismissal in favor of the Defendants. The Plaintiffs later lost their appeal of the denial of discontinuance in the English Court of Appeal.

On March 25, 1992, Samuel Scheiner, Morton Gold, Daniel Squillante, Benoit Dreyfus, Randy Scheiner, Cindy Royce, and Maximus were indicted by the Grand Jury of the County of New York on three counts: (1) conspiracy in the Fourth Degree, in violation of Penal Law § 105.10(1); (2) Insurance Fraud in the First Degree, in violation of

---

**2.** *Scheiner IV* was originally issued on September 4, 1996 and filed under seal on September 6, 1996. This original opinion will be referred to as the "Unredacted Opinion." A subsequent amended opinion, redacting portions of the original opinion referring to Grand Jury testimony, was issued on October 31, 1996 and published at 1996 WL 633418. References to this amended opinion will be to the published version.

Penal Law § 176.30; and (3) Attempted Grand Larceny in the First Degree, in violation of Penal Law §§ 110.00, 155.42. Among those testifying before the Grand Jury were Alizade, Coyne, and McNicholas.

In a plea agreement entered into on October 16, 1992, all charges against Randy Scheiner, Cindy Royce, and Maximus were dismissed. At the same time, Samuel Scheiner, Morton Gold, and Daniel Squillante pled guilty to Attempted Grand Larceny in the Fourth Degree.

Also in 1992, Cindy Royce and Maximus filed suit in the Southern District of New York against their English counsel, Simmons & Simmons. On July 27, 1993, the Honorable Robert P. Patterson granted Simmons & Simmons' motion for summary judgment against Cindy Royce's and Maximus' claims of professional malpractice, breach of contract, and violation of New York Judiciary Law § 487 and denied summary judgment on their claims of unjust enrichment. Judge Patterson also granted Simmons & Simmons' motion to dismiss pursuant to the doctrine of *forum non conveniens.*

Plaintiffs filed their Initial Complaint in this action on January 6, 1993. In *Scheiner I,* issued on September 14, 1993, on Defendants' motion, this Court dismissed the Initial Complaint, granting Plaintiffs leave to replead. Plaintiffs filed their Amended Complaint on April 11, 1994.

The Amended Complaint includes the following ten claims against the Defendants: (1) deceptive business practices, in violation of New York General Business Law § 349; (2) malicious prosecution; (3) intentional infliction of emotional distress upon Randy Scheiner; (4) intentional infliction of emotional distress upon Royce Scheiner; (5) abuse of process; (6) civil rights violations, pursuant to 42 U.S.C. § 1983; (7) Racketeer Influenced and Corrupt Organization Act violations, pursuant to 18 U.S.C. §§ 1961–68; (8) negligence and malpractice of Hartley Cooper, John Finch and Levmore–Finch, Inc.; (9) breach of contract by Holmes; and (10) fraud by Holmes.

In *Scheiner III,* this Court held that (1) Plaintiffs' § 1983 claim in their Amended Complaint had alleged facts sufficient to withstand the Omnibus Defendants' motion to dismiss for failure to state a claim; (2) Plaintiffs' claims against Holmes having failed to state a claim under § 1983, the claim against Holmes would be dismissed with prejudice, and the pendent state law claims would be dismissed as an exercise of the court's discretion; and (3) the Court lacked subject matter jurisdiction over Plaintiffs' claims against Cooper, and those claims would, therefore, be dismissed.

In *Scheiner IV,* this Court granted summary judgment in favor of the Omnibus Defendants, dismissing all remaining claims against them, and granted summary judgment in favor of Lloyd's on its cross-claim. 1996 WL 633418. Specifically, *Scheiner IV* dismissed the Plaintiff's federal claims under 42 U.S.C. § 1983, alleging deprivation of their right to be free from malicious prosecution and their right to pursue without interference their civil lawsuit in England, and their state-law claims of deceptive business practices, malicious prosecution, intentional infliction of emotional distress, and abuse of process.

With respect to the Section 1983 claim, this Court held that Plaintiffs had failed to raise a genuine issue of material fact suggesting that there was a lack of probable cause for the Grand Jury indictment, one of the four elements which Plaintiffs were required to establish. This Court explained that the presumption of probable cause created by indictment is "so strong that it may only be overcome by evidence demonstrating that the Defendants engaged in fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." 1996 WL 633418 at *7 (citations omitted). In a 48–page opinion, this Court analyzed the evidence before the Grand Jury and concluded that under the applicable standards set forth in C.P.L. § 190.65, "there was sufficient evidence ... presented to the Grand Jury to support each count of the indictment against each of the Defendants," including testimony from more than forty witnesses spanning over 3,500 pages of transcript, extensive readings of the testimony given by the indicted Defendants themselves during their

insurance examinations under oath and in their written witness statements and oral testimony in the English Litigation. *Id.*

The Opinion also concluded that the strong presumption of probable cause created by the Grand Jury indictment had not been overcome by Plaintiffs' proffered "evidence" of (1) perjury by McNicholas, Coyne and Alizade before the Grand Jury, (2) secret and illegal meetings among the Omnibus Defendants, the Police Department, and the District Attorney's Office, (3) illegal viewing and inspection of Grand Jury evidence, (4) tampering with evidence, (5) knowing disregard of other leads, and (6) effective intimidation of accounting witnesses by granting them immunity in return for misleading testimony.

This Court further held that Plaintiffs had failed to present admissible evidence to create a genuine issue of material fact as to almost all of these contentions, and held that to the extent that genuine issues of material fact existed with regard to any one of them, "the cumulative effect is insufficient, even making all presumptions in Plaintiffs' favor, to create a genuine issue of material fact that there was no probable cause to indict them." *Id.* at *8. This Court concluded that the Defendants' responses to Plaintiffs' 3(g) Statement "amply demonstrated that despite Plaintiffs' attempt to create a genuine issue of material fact, they have adduced little admissible evidence, and that which they have adduced is overwhelmed by the evidence of the Omnibus Defendants." *Id.*

Plaintiffs filed their notice of the instant motion to reargue on September 24, 1996. Submissions were received through October 24, 1996, at which time the matter was deemed fully submitted.

*Discussion*

### I. The Motion to Reargue[3]

Local Rule 3(j) provides in pertinent part, "there shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked."

Thus, to be entitled to reargument under Local Rule 3(j), a party must demonstrate that the Court overlooked controlling decisions or factual matters put before it on the underlying motion. *See Domenech v. City of New York,* 927 F.Supp. 106, 108 (S.D.N.Y. 1996); *Ameritrust Co. Nat'l Ass'n v. Dew,* 151 F.R.D. 237 (S.D.N.Y.1993); *Fulani v. Brady,* 149 F.R.D. 501, 503 (S.D.N.Y.1993).

Local Rule 3(j) is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court. *See Caleb & Co. v. E.I. Du Pont De Nemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y.1985). In deciding a Local Rule 3(j) motion, the court must not allow a party to use the motion to reargue as a substitute for appealing from a final judgment. *See Morser v. AT & T Information Sys.,* 715 F.Supp. 516, 517 (S.D.N.Y.1989); *Korwek v. Hunt,* 649 F.Supp. 1547, 1548 (S.D.N.Y.1986). Therefore, a party in its motion for reargument "may not advance new facts, issues or arguments not previously presented to the court." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,* No. 86 Civ. 6447, 1989 WL 162315, at *3 (S.D.N.Y.1989).

Because the Court overlooked neither controlling decisions nor factual matters put before it on the underlying motions for summary judgment, the present motions will be denied.

### A. Section 1983 Claims

Plaintiffs apparently do not challenge the dismissal of the § 1983 cause of action alleging a deprivation of their right to pursue without interference their English lawsuit.

Plaintiffs do contend, however, that the Court overlooked matters related to its claim of malicious prosecution.

To establish a malicious prosecution claim under New York law, a plaintiff must prove four elements: (1) the initiation or continuation of a criminal proceeding against

---

3. Defendants contend that the motion to reargue should be denied as untimely, because it was filed more than ten days after the docketing of the Opinion disposing of the summary judgment

motion. Because the motion to reargue is denied on the merits, the Court will not consider the question of the motion's timeliness.

the plaintiff; (2) the termination of the proceeding in the plaintiff's favor; (3) a lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for the defendant's actions. *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir.1995); *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir.1991); *Pandolfo v. U.A. Cable Sys.*, 171 A.D.2d 1013, 568 N.Y.S.2d 981, 982 (N.Y.App.Div.4th Dep't 1991). In *Scheiner IV*, this Court held that Plaintiffs had failed to raise a genuine issue of material fact suggesting that there was a lack of probable cause for the Grand Jury indictment. The question on the underlying summary judgment motion was not whether a reasonable jury would not have convicted the plaintiffs or whether a reasonable jury could find that there were irregularities in the prosecution of the plaintiffs, but whether a reasonable jury could find that the Grand Jury did not have before it the minimal competent evidence required to support a finding of probable cause. This Court concluded that a reasonable jury could not so find.

■ Plaintiffs raise a number of matters that they contend the Court overlooked in its September 4, 1996 Opinion.[4] Plaintiffs' primary contentions on reargument are that:

(1) the Court should not have relied upon the Grand Jury Summary and Castleman affidavit because they were allegedly "inaccurate" and "inadmissible" and that in any event, summary judgment should not have been granted before the Plaintiffs had an opportunity to view all of the Grand Jury transcripts;

(2) summary judgment was inappropriate because Plaintiffs disputed the paragraphs of Defendants' Rule 3(g) statement upon which the Court based its conclusion that the Grand Jury had sufficient evidence to support the indictment, thus creating a triable issue of fact as to the presence of probable cause;

(3) Plaintiffs' evidence created a triable issue of fact as to perjury before the Grand Jury, which would overcome the presumption of probable cause;

(4) Plaintiffs' evidence created triable issues of fact concerning alleged "illegal viewing of Grand Jury Evidence" sufficient to overcome the presumption of probable cause;

(5) Plaintiffs' evidence created triable issues of fact concerning alleged tampering with evidence that would overcome the presumption of probable cause;

(6) Plaintiffs' evidence creates genuine issues of material fact on the issue of whether police conduct deviated egregiously from statutory requirements or accepted practices, such that the presumption of probable cause is overcome.[5]

■ With respect to each of these contentions, Plaintiffs have failed to identify controlling decisions or any factual matters put before this Court on the underlying motion which were overlooked in rendering the Opinion. In their brief, Plaintiffs cite, with little apparent discrimination and often with little explanation, to numerous paragraphs of their Rule 3(g) statement. While the original opinion expressly addressed many of the contentions related to these paragraphs, not all

---

4. Plaintiffs' memorandum supporting its motion for reargument does not "set[] forth *concisely* the matters or controlling decisions which counsel believes the court has overlooked." Instead, Plaintiffs have submitted a 62–page brief that essentially rehearses the same factual matters and legal arguments advanced in their opposition to the motion for summary judgment. Such an indiscriminate approach to a motion to reargue leads to needless and burdensome relitigation of issues already resolved by the Court. While this motion might properly be denied for failure to comply with the technical requirement of brevity, this Court will consider the Plaintiffs' contentions.

5. In their reply brief, Plaintiffs also raise (for the first time in relation to these motions) several other contentions related to the testimony before the Grand Jury and challenge the compounding of interest on the counter-claim. Because these matters are improperly raised for the first time in a reply brief, they will not be considered. *See United States v. Gigante*, 39 F.3d 42, 50 n. 2 (2d Cir.1994); *Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F.Supp. 667, 677 n. 5 (S.D.N.Y. 1995).

of the paragraphs were cited or addressed individually in the opinion. Instead, the Opinion addressed the defects of the Plaintiffs' contentions and evidence collectively, finding that:

> Plaintiffs lack admissible evidence to create a genuine issue of material fact as to almost all of these contentions. To the extent that genuine issues of material fact exist with regard to any one of them, the cumulative effect is insufficient, even making all presumptions in Plaintiffs' favor, to create a genuine issue of material fact that there was no probable cause to indict them. The Omnibus Defendants' Annotated Response to Plaintiffs' 3(g) Statement and their Annotated Rule 3(g) Statement comparing Plaintiffs' Response Thereto amply demonstrate that despite Plaintiffs' attempt to create a genuine issue of material fact, they have adduced little admissible evidence, and that which they have adduced is overwhelmed by the evidence of the Omnibus Defendants.

1996 WL 633418 at *8. Although each of Plaintiffs' contentions was not individually enumerated and rejected in the Opinion, each was fully considered by the Court in rendering the Opinion.

### 1. The Grand Jury Summary and Access to Grand Jury Transcripts

Plaintiffs argue that the Summary and the Castleman affidavit are "inadmissible," apparently on the grounds that the Summary was inaccurate and that they were not permitted to depose Mr. Castleman and other Assistant District Attorneys. There is nothing here that was overlooked on the motion for summary judgment. Indeed, the only "inaccuracy" Plaintiffs were able to place before the Court during the briefing of the summary judgment motion was a minor inaccuracy in the Summary of the testimony of Brian Emmert. This inaccuracy is insufficient to undermine the reliability of the remainder of the Summary.

■ Plaintiffs' remaining contentions relate not to the Court's conclusions on the summary judgment motion, but to their attempts to obtain discovery of the Grand Jury transcripts. This motion to reargue the

summary judgment motion is not the proper vehicle to reargue previously decided discovery disputes. Moreover, Plaintiffs never sought to appeal the state court's determination that the transcripts would not be released, nor did they seek to compel the District Attorney to produce further transcripts following this Court's December 18, 1995 decision until a month after the summary judgment motion was fully briefed and argued. Plaintiffs do not now show how the transcripts of the various witnesses were necessary for them to oppose the summary judgment motion. Plaintiffs were able to depose the witnesses and question them about their Grand Jury testimony.

■ In any event, Plaintiffs' principal argument is that these witnesses contradicted themselves or each other. Such contradictions are irrelevant to the issue of whether the Grand Jury had sufficient evidence to indict. All that is required to support the indictment is "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof." *People v. Jennings,* 69 N.Y.2d 103, 115, 512 N.Y.S.2d 652, 657, 504 N.E.2d 1079, 1084 (1986). Contradictions of evidence do not render that evidence incompetent. The alleged "contradictions" were heard by the Grand Jury, who was the "arbiter of the credibility and the weight to be given to the evidence," *People v. Haney,* 30 N.Y.2d 328, 336 n. 10, 333 N.Y.S.2d 403, 409 n. 10, 284 N.E.2d 564, 568 n. 10 (1972) and the Grand Jury voted to indict based upon the competent, though not necessarily credible, evidence of wrongdoing.

### 2. Plaintiffs' Attack on the Sufficiency of the Evidence Before the Grand Jury

Plaintiffs contest the determination that the Grand Jury "had before it ample evidence that Scheiner, Squillante, and Gold had staged the burglary on behalf of Cindy Royce." Unredacted Opinion at 18–22. They assert that they had "disputed" the paragraphs of Defendants' 3(g) Statement that the Opinion cited in support of this determination and cite to the "contrary" paragraphs of their 3(g) statement, which

they claim created triable issues of fact. However, this Court already considered that evidence and rejected it as inadmissible or insufficient to overcome the overwhelming evidence supporting the Grand Jury's finding of probable cause to indict. 1996 WL 633418 at *8.

Plaintiffs' submissions rely upon the same paragraphs of their 3(g) Statement submitted on the motion for summary judgment and claim that these paragraphs "disputed" paragraphs of Defendants' 3(g) Statement relied upon in the Opinion. However, this Court considered the contents of the cited paragraphs and determined them to be insufficient to create a genuine issue of material fact. The cited matters were, *inter alia,* immaterial, not supported by the cited references, conclusory, inadmissible or supported only by inadmissible documentation, overbroad and nonspecific references to voluminous depositions, transcripts or witness statements, or massive exhibits.

Plaintiffs failed in the briefing of the summary judgment motion to demonstrate the admissibility of these matters or how they created a genuine issue of material fact on the issue of probable cause. They still have not refuted Defendants' demonstration that most of the evidence is inadmissible.

### 3. *Plaintiffs' Claims that Evidence of Perjury Overcomes Presumption of Probable Cause*

Plaintiffs challenge the determination that they failed to demonstrate that there were triable issues of fact as to perjury before the Grand Jury. Plaintiffs do not dispute the strict standards for establishing perjury under New York law. *See Scheiner IV,* 1996 WL 633418 at *8. Instead, Plaintiffs rehearse the same paragraphs of their 3(g) statement, which consist largely of unsupported conclusions that certain witnesses committed perjury or inadmissible argumentative interpretation of photographs or physical evidence that the Grand Jury had before it. The court concluded that there might be a genuine issue as to only one of the allegedly perjurious statements, but that a dispute as to this single statement was insufficient, in the context of the ample evidence before the

Grand Jury, to permit a rational trier of fact to conclude that the Grand Jury did not have probable cause to indict. Unredacted Opinion at 27.

Plaintiffs also cite to several other paragraphs of their 3(g) statement that they claim refute the Opinion's conclusion that one detective's allegedly perjurious testimony was corroborated by physical and photographic evidence available to the Grand Jury at the time the detective's testimony was taken. They argue that there were flaws in the chain of custody of the corroborating evidence and that the evidence was tainted. Plaintiffs contend that the corroborating evidence was thus "inadmissible."

■ The Court considered and rejected this argument, because Plaintiffs' contention that the physical evidence would not be "admissible" is not legally relevant to a determination of whether the Grand Jury had probable cause to indict. This is because the standard for admissibility in Grand Jury proceedings is lower than for admissibility at trial. In *People v. Oakley,* 28 N.Y.2d 309, 321 N.Y.S.2d 596, 598, 270 N.E.2d 318, 319 (1971), the New York Court of Appeals stated that under New York law, evidence that is

> inadmissible because incompetent (e.g. hearsay) is different from evidence competent prima facie, rendered inadmissible only by extrinsic, subsequent proof. Evidence of the latter kind stands sufficient until nullified. For purposes of grand jury presentations ... until nullified the evidence is competent and may supply a necessary element in a prima facie case.

*Id.* The evidence before the Grand Jury that is now attacked by Plaintiffs was competent evidence when presented. The Grand Jury heard testimony regarding the retrieval and handling of the evidence. The evidence has not been nullified and is thus competent evidence sufficient to supply a necessary element of the prima facie case and probable cause to indict.

Plaintiffs also challenge this Court's determination that certain allegedly false statements consisted of opinion rather than fact, and therefore could not support a claim of perjury. Plaintiffs have cited no controlling

law that the Court overlooked. In fact, Plaintiffs cite to *United States v. Debrow*, 346 U.S. 374, 376, 74 S.Ct. 113, 114–15, 98 L.Ed. 92 (1953) and *Kolaski v. United States*, 362 F.2d 847, 848 (5th Cir.1966), the very cases relied upon in the Opinion in determining that several of the allegedly perjurious statements were opinions.

### 4. *Claims of Illegal Viewing of Grand Jury Evidence*

Plaintiffs also contend that there were triable issues of fact concerning alleged illegal viewing of Grand Jury Evidence. Again, Plaintiffs repeat almost verbatim the paragraphs of their 3(g) Statement cited in their original opposition the Defendants' Summary Judgment motion. Again, the Court considered Plaintiffs' contentions in this regard and concluded that they were unsupported by the admissible evidence presented by the parties and failed to create a triable factual issue about whether such viewing undermines the Grand Jury's probable cause determination.

### 5. *Plaintiffs' Claims of Tampering With Evidence*

Plaintiffs call the Court's attention to certain facts on the issue of alleged tampering with evidence. The Court did not overlook the Plaintiffs' contentions regarding tampering and specifically noted that the changes in the condition of some evidence to which Plaintiffs allude were disclosed and explained to the Grand Jury. Unredacted Opinion at 32–33. Plaintiffs also cite various paragraphs of their 3(g) Statement. As with Plaintiffs' other contentions, this Court concluded that the tampering argument was unsupported by admissible evidence or failed to raise triable issues relating to alleged "tampering." Plaintiffs' contentions were not overlooked. The Court simply disagreed with them. The disagreement may be grounds for appeal, but it is not grounds for reargument.

### 6. *Police Misconduct/Knowing Disregard of Other Leads*

Plaintiffs do not dispute the Court's conclusion that the police were not obligated to search for evidence favorable to the defense.

*See People v. Lancaster*, 69 N.Y.2d 20, 25–26, 511 N.Y.S.2d 559, 562, 503 N.E.2d 990, 993 (1986). Instead, they contend that they have produced evidence creating genuine issues of material fact as to whether the police conduct in this case "deviated egregiously from proper police conduct." *Lee v. City of Mt. Vernon*, 49 N.Y.2d 1041, 1043, 429 N.Y.S.2d 557, 558, 407 N.E.2d 404, 405 (1980). Again, Plaintiffs present an undifferentiated and indiscriminate rehearsal of the same facts that they presented at the time of the summary judgment motion. The recite wholesale paragraphs of their 3(g) Statement, which this Court already concluded did not raise genuine factual issues. Again, the bulk of the "evidence" was inadmissible. There are no controlling legal precedents or probative facts that were overlooked in deciding the underlying summary judgment motion.

### B. *State Law Claims*

■ Plaintiffs also contest the dismissal of the state law claims for the same reasons advanced in their opposition to the motion for summary judgment. The Court did not overlook the matters raised by Plaintiffs.

With respect to the Deceptive Business Practices Claim, Plaintiffs do not address *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995), and *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995), which stand for the proposition that there is no private right of action under N.Y.Gen.Bus.Law § 349 unless the conduct charged has a broad impact on consumers at large. Instead, Plaintiffs reiterate their prior contentions about an alleged similar incident involving another company. These allegations, which were based on inadmissible hearsay, do not amount to allegations of a practice with broad impact on consumers.

With respect to the intentional infliction of emotional distress claim, Plaintiffs contest the Court's conclusions that the claim is time barred and that Royce Scheiner's claim could not be sustained because Defendants did not breach any duty owed to her. They contend that the alleged conduct was a "continuing

**242**

tort", a theory this Court expressly concluded was contradicted by the allegations of the complaint, *Scheiner IV,* 1996 WL 633418 at *13, and which, if accepted, could erode the effect of the statute of limitations as to such actions.

Plaintiffs' contentions with respect to the dismissal of the abuse of process claim fails to raise issues overlooked in the Opinion. The Court concluded that Plaintiffs failed to state a claim because they do not allege or provide admissible facts supporting a finding of pursuit of a collateral objective occurring subsequent to issuance of the Grand Jury's indictment. *See Lopez v. City of New York,* 901 F.Supp. 684, 691 (S.D.N.Y.1995).

#### C. *The Counterclaim*

■ Plaintiffs also contest this Court's determination of the counterclaim by the Lloyd's defendants. As with the previous arguments, Plaintiffs have presented no controlling law or factual issues overlooked by the Court on the underlying motion. Accordingly the motions to reargue and amend the judgment on the counterclaims will be denied.[6]

#### Conclusion

For the reasons set forth above, Plaintiffs' motions are hereby denied.

It is so ordered.

---

**6.** Cindy Royce and Maximus filed for bankruptcy protection after these motions were fully submitted. The automatic bankruptcy stay, 11 U.S.C. § 362, may operate to bar decision of these motions as to the counterclaim, since the counterclaim is an action "against the debtor[s]" Cindy Royce and Maximus. *See Koolik v. Markowitz,* 40 F.3d 567, 568–69 (2nd Cir.1994) (counterclaim is action "against the debtor," within meaning of section 362). However, the stay does not bar decision as to the non-bankrupt plaintiffs. *Teachers Ins. & Annuity Ass'n v. Butler,* 803 F.2d 61, 65 (2nd Cir.1986). In any case, Cindy Royce and Maximus have not asked that the Court's determination of the reargument of the counterclaim be stayed.